WAYNE ANDREW WHITWORTH
1727 SUNNYILLS DRIVE
MILPITAS, CALIFORNIA 95035
PHONE (669) 251-4624
IN PROPRIA PERSONA

FILED
APR 20 2018

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

WAYNE ANDREW WHITWORTH,

    Plaintiff.

    v.

ALSCO Corporation, et al;
Paul Donald Johnson, an individual,
Jason Chelius, an individual.

    Defendants.

CASE NO:

CV 18 2402 HRL

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
AND HOSTILE WORK ENVIRONMENT ALSO;
DISPARATE TREATMENT PUIRSUANT TO
PURSUANT TO 42 U.S.C. § SECTION 1981.

Plaintiff claims against defendants as follows:

## I.    NATURE OF ACTION

1.    Plaintiff brings this action for monetary damages and statutory penalties for a violation of his civil rights, and statutory penalties for a hostile work environment and disparate treatment as a former employee of defendants Alsco, Inc. ("Alsco," "company or employer") Paul Johnson General Manager of Alsco San Jose, Jason Chelius, supervisor of Plaintiff, for violating plaintiffs' civil rights pursuant to 42 U.S.C. Section 1981.

## II.    JURISDICTION AND VENUE

2.    The United States District Court for the Northern District has jurisdiction of plaintiffs' claims Pursuant to 28 U.S.C § 1331.

3.    Venue is appropriate in the United States District Court for the Northern District pursuant to 28 U.S. Code Section 1391.

4.    All of the alleged acts and omissions took place within the Northern District of California

## III.    PARTIES

5.    Plaintiff Wayne Andrew Whitworth is a resident of Milpitas, California and citizen of California and is formerly employed by defendants as a "Corporate Sales Representative."

1.

6.    Defendant Alsco is a Utah corporation doing business in California within the Northern District San Jose, California.

7.    Defendant Paul Johnson is currently employed with Alsco, works and resides within the Northern District of California.

8.    Defendant Jason Chelius is currently employed with Alsco, works and resides within the Northern District of California.

9.    Alsco is an employer for purposes 42 U.S.C. § 1981; 28 U.S.C. § 1331; 28 U.S. Code § 1391.

### IV.    FACTUAL ALLEGATIONS

10.    Defendant Alsco is engaged in the rental, sale, cleaning and delivery of uniforms, linens, and other products to businesses throughout the state of California.

11.    Plaintiff formerly employed by defendant as a "Corporate Sales Representative" (CSR), developing new business for defendants Alsco, Paul Johnson General Manager, and Jason Chelius Regional Sales Manager, throughout the State, however primarily Northern California.

12.    Plaintiff worked to achieve weekly, quarterly, and annual quotas that created a natural environment of pressure, stress, thus was not unique to this position or by industry standards.

13.    Plaintiff alleges he did not want nor consent to pressure, stress and unwanted vulgar comments, physically threatening actions and racially expressed and implied comments by herein named defendants, directly or indirectly, but not limited to weather defendants knew or should of know their harmful actions.

14.    Defendants' did willfully and with intent deprive plaintiff of his civil rights by engaging in such willful acts to create, foster, and cultivate an environment, which as a result, violated his civil rights, also created a hostile work environment and disparate treatment, which ultimately resulted in retaliation.

15.    Plaintiff alleges defendants Paul Johnson and Jason Chelius where both previously put on corporate notice not to continue to engage in conduct that is demeaning, vulgar, (verbally or physically) abusive or of a racial nature within its work environment.

2.

to curse, demean, and verbally threaten plaintiff with physical harm on multiple occasions. plaintiff further asserts by allegations that herein that defendant Paul Johnson was made aware of each incident set forth

16.    Plaintiff alleges that defendant Paul Johnson cultivated, nourished, and set the tone for a work environment that was hostile, also racially charged, by his direct actions, and verbal tone that demeaned, belittled the entire corporate sales staff including, but not limited to plaintiff.

17.    Plaintiff alleges that defendant Paul Johnson cultivated, allowed, current and former employees' to curse, demean, and verbally threaten plaintiff with physical harm on multiple occasions, plaintiff further asserts by allegations that herein that defendant Paul Johnson was made aware of each incident set forth herein.

18.    Plaintiff alleges that defendant Paul Johnson continuously engaged in verbal rants and raves that included but was not limited to, dumb ass stupid sales man (Plaintiff Whitworth) can never do anything right (expletives omitted).

19.    Plaintiff alleges that defendant Paul Johnson continuously engaged in telling vulgar jokes that always had the "Black Guy" included in them, or was the stupid "Black Guy" or the "Black guy" with the biggest member built like a horse, but not limited too.

20.    Plaintiff alleges that Paul Johnson allowed an employee (Hereafter known as Jerrod Bunch), to verbally threaten Plaintiff without any recourse, intervention or corrective action(s) on two separate occasions even though plaintiff requested an employee conflict meeting with Paul Johnson and human resources, no corrective action was ever taken by Paul John nor did human resources resolve plaintiff's complaints.

21.    Plaintiff alleges that Paul Johnson allowed an employee (Hereafter known as Ken Gregg), on three separate occasions, verbally threatened Plaintiff and used profanities, after the first incident, plaintiff approached defendant Paul Johnson, at which time, Assistant General Manager in training Ken Gregg apologized to Plaintiff, as a result, plaintiff was given an opportunity to accept or reject his apology, plaintiff accepted his apology on condition that plaintiff be allowed to express his feelings and offer professional guidance about how upper level management should conduct themselves, in a professional work environment, plaintiff alleges that these corrective actions were only temporary.

22.    Plaintiff alleges that on the second occasion while in corporate staffing meeting plaintiff suggested as a way to resolve communication issues between department(s), plaintiff offered to send advisor emails to all department heads of which included Ken Gregg's service department, Ken Gregg in no uncertain terms, stated "I'm not doing shit for you." (Plaintiff), notes that Ken Gregg was aware of corporate policy not to

3.

engage in behavior that was not appropriate or involved a co-worker that previously asked not to be spoken to in a disrespectful or vulgar manner, defendant Paul Johnson was present at this meeting and defendant Ken Gregg's actions and subsequent behavior.

23.     Plaintiff alleges that Service Manager Ken Gregg, with malice, disparate intentions did willfully withhold newly acquired client folders to be processed that were turned in by plaintiff (Whitworth), for several weeks, that resulted in plaintiff losing numerous new business opportunities which plaintiff procured as required based on his job requirements, these willful actions became regular practice.

Ken Gregg Service Manager, also instructed his employee's in the service department not to assist support or talk to plaintiff in any manner that would help support or assist in transitioning new clients in the Alsco experience.

24.     Plaintiff alleges that defendant Paul Johnson was made aware that Ken Gregg was engaging in disparate and deliberate actions that greatly hindered plaintiff from competing his basis employment functions As a result of these actions, plaintiff requested an employee conflict meeting with Paul Johnson and human resources, no corrective action was ever taken by Paul Johnson nor did human resources resolve plaintiff's complaints numerous complaints.

25.     Plaintiff alleges that on one occasion defendant Paul Johnson willfully, with deliberate intent, and reckless abandon, did commit a vulgar act that would shock the conscience of any reasonable person in the work place, by approaching Plaintiff (Whitworth) and describing how much he hated the National Rifle Association (NRA), defendant Johnson stated, in no uncertain terms, "that he could not figure out why the (NRA), continues to send him literature, while holding an envelope in his hand for Plaintiff to see, which was clearly addressed with returned addressed to the (NRA), defendant further stated in no uncertain terms, that he just came from the restroom where he had taken some of his personal feces and spread in on the membership letter to send back to the (NRA), at the time of this incident, defendant was in a state of agitated excitement that would be attributed to a juvenile, (Expletives omitted).

26.     Plaintiff alleges that defendant Paul Johnson, instructed other employees in the service department, production department, also critical office support staff, not to communicate nor assist Plaintiff in any manner, although these employees provided critical support roles, without their support it created an

4.

environment extremely difficult to complete and develop new sales opportunities, ultimately new business for Alsco Corporation, as a result of these actions, completing the basic tasks as a corporate sales representative, became extremely impossible to achieve, significantly as plaintiff alleges herein, created a hostile work environment, created an atmosphere ripe with disparate treatment, also facilitated numerous retaliatory actions of defendant Paul Johnson.

27.    Plaintiff alleges that defendant Paul Johnson and Jason Chelius, engaged in disparate treatment, which resulted in plaintiff being placed extremely outside of other individuals within his situated class which discriminated against plaintiff Wayne Whitworth, by direct and or indirect actions that placed plaintiff under extreme pressure and stress.

28.    Plaintiff suffered a heart attack, developed deep vein thrombosis, also suffered from a thorn bicep and within a few weeks, as a result was ultimately place on medical leave, upon his return within several months' plaintiff was not allowed to restart his required sales quotas, which plaintiff was not able to achieve based on recurring medical setbacks and poor health issues plaintiff ask in no uncertain terms to be allowed to re-start his sales quota requirements in spite of numerous requests to his supervisor defendant Jason Chelius.

29.    As a result, plaintiff was fired, and given a vague explanation as to why he was being let go without any discussions, or offer to be referred to an employee assistance program, ultimately as a result plaintiff, upon release was not able to finish his Cardio Rehabilitation due to loss of employment and medical benefits.

30.    Several months' later plaintiff received a phone call from his former supervisor defendant Jason Chelius, at which time he stated in no uncertain terms, "Would you like to come back to work I was in the shower this morning and I had some type of epiphany…I believe Paul and myself made a mistake because you can sell we need someone who can sell." (quotations omitted). Plaintiff again asked that he be allowed to restart his quota as a condition to return to work, defendant Jason Chelius stated in no uncertain terms that he could not grant that request, however he could reinstate plaintiffs' past performance based base salary, Plaintiff reluctantly accepted solely based on the fact that his medical benefits would be immediately reinstated as well.

5.

31.    *Plaintiff further alleges that over the next eighteen (18) months two other employees who belonged to same sales region and under the direct supervision of Jason Chelius (Hereafter know as Region 3), suffered from life changing medical issues.*

32.    *Plaintiff alleges and sets forth that the first individual mentioned supra (Hereafter known as Van VanDeGraaf), suffered a heart attack similar to plaintiffs' subsequently he was placed on medical leave, however upon Mr. VanDeGraafs" return he was allowed to restart his basic required sales quota, the second individual mentioned supra (Hereafter known as Larry Trumbo), who was diagnosed with cancer and was subsequently placed on medical leave for therapeutic treatments, Mr. Trumbo too was allowed to restart his basic required sales quota, as such, plaintiff asserts these actions place plaintiff outside his situated class and rise to the level of disparate treatment by both defendants Paul Johnson and Jason Chelius.*

33.    *Plaintiff alleges that defendants Paul Johnson and Jason Chelius adverse actions were of material affect that greatly affected compensation, terms, conditions, or privileges of employment, as a result conditions became so stressful and created overwhelming anxiety that plaintiff, as a result, was overwhelmed with stress and anxiety during his employment.*

34.    *Plaintiff alleges that defendant Jason Chelius acting as plaintiff's direct supervisor did willfully commit acts that were desperate and demeaning in nature throughout his tenure as supervisor who was assigned to provide leadership guidance and sales training mentorship to plaintiff throughout his employment with Alsco.*

35.    *Plaintiff alleges that defendant Jason Chelius acting as plaintiff's direct supervisor did willfully commit acts that were desperate and demeaning in nature, in that, defendant Jason Chelius for some inexplicable reason would address plaintiff as "Stud" or in no uncertain terms in context. "Come on stud I expect you to do better, way to go stud, stud this and stud that, continuously, as a result, rarely addressing plaintiff by his given name.*

36.    *Ultimately Plaintiff approached defendant Jason Chelius during a quarterly ride along, and in no uncertain terms, ask defendant Jason Chelius, why does he call plaintiff stud all the time? At which time, defendant Jason Chelius, appeared surprised, nevertheless, asked does that bother you, at which time, plaintiff stated, in no uncertain terms, "yes" in fact plaintiff verbally explained clearly how that statement or*

6.

expression made plaintiff very uncomfortable, in that, in plaintiffs' belief and perception it connoted slave ownership for the purpose of selective breeding and ultimately strong dominate field hands, plaintiff sets forth that defendant Jason Chelius did stop addressing plaintiff in that manner for a short period of time, nevertheless, upon plaintiffs' return from medical leave defendant Jason Chelius shortly their after again started addressing plaintiff in this disrespectful manner as such herein,  it is alleged that defendant Jason Chelius violated plaintiffs' civil rights by his continuous statements, continuous way of addressing plaintiff.

37.    Plaintiff alleges in his belief and perception that a significant amount of the disparate treatment and subsequent retaliation from defendants Paul Johnson and Jason Chelius were motivated by a subject relating to dumping of untreated and diluted wastewater at the San Jose Alsco facility over a period of time while plaintiff was employed there.

38.    Plaintiff alleges that while employed at Alsco San Jose, which extended just over six years, there were numerous occasions that arose were Alsco San Jose had chemical formula issues causing the linens after normal wash cycles to take on a foul odor, as a result of this condition Alsco San Jose would have to dump the water in the storage tanks then re-wash all the linen to process for waiting customers.

39. Plaintiff notice that defendant Paul Johnson would become extremely agitated when this would happen, on numerous occasions plaintiff approached defendant Paul Johnson to ask why he was so agitated and in no uncertain terms defendant Johnson would state, "because I have to have the engineers dump all the stinky water as quickly as possible to get clean water in the tanks to re-wash all the linen, further Johnson would state that it would costing extreme amount of time and money to dump the water loaded with excessive chemicals." Defendant Paul Johnson then would always state to plaintiff not to discuss this subject with anyone inside or outside the company.

40.    Plaintiff alleges that defendant Jason Chelius while conducting a quarterly ride along with plaintiff defendant Chelius brought the subject of water dumping up as a topic of discussion, at which time, he asked plaintiff Whitworth why he was so passionate about discussing water dumping with other employee's from the engineering department at which time, plaintiff Whitworth replied what does that have to do with developing new accounts? at which time, defendant Jason Chelius changed the subject.

41. Plaintiff alleges that defendant Jason Chelius on numerous occasions while conducting meetings would address his regional staff of sales consultants which included plaintiff Wayne Whitworth in weekly meetings that we were not to discuss the topic of water dumping at the Alsco San Jose plant with our potential or existing clients based on going litigations at other Alsco plants that were posted on the internet in addition we were not to discuss Alsco San Jose or any other Alsco locations especially between the years 2014 and 2016 these verbal directions became more frequent.

7.

42. In August of 2016 Plaintiff alleges that defendant Paul Johnson approached plaintiff while he was In the front office speaking with the accounts receivables clerk concerning a potential clients' credit status at which time, defendant Paul Johnson approached plaintiff yelling extremely loud, however in no uncertain terms defendant Johnson stated; "what are you doing talking to the office staff and why are you in the front office? At which time, plaintiff Whitworth turn around looked at defendant Paul Johnson who was extremely angry and visually agitated, Plaintiff Whitworth immediately became very confused lost for a response and subsequently overwhelmed with emotion due to the recent loss of a loved one, plaintiff Whitworth managed to utter "I am so confused right now I don't know what to do around here anymore turn right left, stand here don't stand here, don't talk to this person don't talk to that person what I'm I suppose to do?" with watery eyes turned and walked out.

43. Plaintiff alleges that approximately a half hour later defendant Paul Johnson approached plaintiff, at his assigned desk, at which time, he stated in no uncertain terms, "I don't think you knew your supposed to be talking to the office front office staff, I thought I heard you discussing the water issued I asked you not to talk about, at which time, I stated "No I was taking about how to find a potential client entity status on the Secretary of State business portal web site.

43. Plaintiff alleges that after this incident he fell into a deep state of depression and did not leave the house for at least four or five days, plaintiff further alleges that he lost his appetite could not sleep nor could he focus on any daily simple tasks such as bathing, shaving or even simply getting out of bed or getting dressed.

44. Plaintiff alleges that defendant Jason Chelius started calling him for several days leaving messages that wherein he stated in no uncertain terms, "Where you at stud I called you again today and you didn't call me back, give me a call stud."

45. Plaintiff alleges under his belief and perception that defendants Paul Johnson and Jason Chelius both committed acts that amounted to disparate treatment, among other things, which may rose to retaliatory actions so that plaintiff would not continue to be out spoken concerning water dumping at the San Jose Alsco plant.

8.

## V.    FIRST CAUSE OF ACTION
### Civil Rights Violation

46.    Plaintiff restates and re-alleges the allegations set forth in paragraphs 1 through 45 above.

47.    Plaintiff alleges that defendant's actions violated his Civil Rights pursuant to 42 U.S.C. § Section 1981 of the United States Constitution, as a result, of defendant's acts and omissions, plaintiff has been damaged, the amount of compensatory damages, punitive damages, in addition, any other damages the court may deem appropriate at the time of trial.

## VI.    SECOND CAUSE OF ACTION
### Hostile Work Environment

48.    Plaintiff restates and re-alleges the allegations set forth in paragraphs 1 through 47 above.

49.    By the foregoing defendant's actions were willfully deliberately motivated, as such, defendant's cultivated nourished and created a hostile work environment pursuant to 42 U.S.C § Section 1981,

50.    As a result of defendant's acts and omissions, plaintiff has been damaged the amount of compensatory damages, punitive damages, in addition, any other damages the court may deem appropriate at the time of trial.

## VII.    THIRD CAUSE OF ACTION
### Disparate Treatment

51.    Plaintiff restates and re-alleges the allegations set forth in paragraphs 1 through 50 above.

52.    By the foregoing defendant's actions were willfully deliberate, not well thought out, or they acted out for various inexplicable reasons, nevertheless defendant's acts and omissions amount to disparate treatment

53.    Plaintiff alleges that defendant's actions violated his Civil Rights pursuant to 42 U.S.C. § Section 1981 of the United States Constitution, as a result, of defendant's acts and omissions, plaintiff has been damaged, the amount of compensatory damages, punitive damages, in addition, any other damages the court may deem appropriate at the time of trial.

9.

### VIII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests

1.  Award compensatory damages in the amount to be determined by a trier of fact at the time of trial.

2.  Award punitive damages in the amount to be determined by a trier of fact at the time of trial.

3.  Grant plaintiff's request for demand for jury trial.

4.  Damages in the amount of $3,000,000.00

5.  Such other relief as this court deems just and proper at the time of trial.

Dated: April___20___, 2018.                 Wayne Andrew Whitworth
                                            Plaintiff / Complainant


By: _____
                                            Wayne Andrew Whitworth Plaintiff
                                            In Propria Persona

10.